The next case this morning is number 5190160, People v. Sutton. Arguing for the appellant, Austin Sutton, is Julie Thompson. Arguing for the appellee, People of the State of Illinois, is Pat Daly. Each side will have up to 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Again, you'll see the digital timekeeping device on my screen, and I'll bang the gavel when time has expired. And remember, only the clerk of the court is permitted to record these proceedings. Morning, Counsel. Morning, Your Honor. And this is 5190160. As the clerk indicated, a motion was made, and granted allowing some extra time in this particular case. Each side will get 15 minutes, and then the 5 minutes for rebuttal. You ready to proceed, Ms. Thompson? I am ready, Your Honor. Then go right ahead. Thank you. Austin Sutton was a 15-year-old boy who cried out for help to the adults in his life. And instead, Austin was sentenced to 30 years in prison. I want to start this argument by talking with you a little bit about who Austin is and how he got where he is now. All of the information that I'm about to give you is information that was considered by the trial court in the sentencing hearing. Austin entered a guilty plea, and the only issues that we have raised here today are sentencing issues. Austin was born in December of 1997. His parents were married. He was the firstborn child. Austin, when he was 4 years old, gathered up all of the toys that he had and piled them in his family's living room and set them on fire. When he was 4, that was the same year that the sexual abuse from his father began. Austin performed oral sex on his father, his father's urging, until Austin was 6, and the abuse stopped because his father died in a car accident. Austin's mother subjected Austin and his younger sister to domestic violence, but that ended when she remarried. Austin reports that the abuse that she suffered at the hands of her second husband was so severe that she quit abusing her own children. Austin had some learning disabilities and was subsequently diagnosed with ADHD. He had some problems at school. He had difficulty making friends. His family home life was not stable, and as a result, his family moved nine times during those first 15 years of his life. He changed schools frequently. He was not able to keep friends, and when Austin talks about his education, he refers to himself as an outcast. Nobody liked him. He didn't know why, but his only real friend was his grandmother. Despite those difficulties, Austin was in special ed classes and was on track to graduate with his class. Austin's history with counseling began when he was 4 when he started the fire. The counselor never discovered the reason for the fire, but Austin reports that he has been in counseling off and on throughout his life and that DCFS has been involved in his family since he can remember. Austin has a history of self-mutilation, cutting, suicide attempts. He's been diagnosed with major depressive disorder and has been placed on medication for some points of his life. When he was 10, Austin was arrested and charged in Sangamon County with a sex offense. At the age of 12, he was placed on probation and began counseling. The record shows that during a counseling session, Austin disclosed that he was continuing to engage in sex offenses. This resulted in a police investigation. Austin was questioned. He spoke voluntarily to the police, waived his rights, made two different statements, admitted his involvement in certain crimes, and made no effort to hide what he had done and been involved in. Austin was criminally charged as a result of this investigation when he was 15 years old. Because of the statute at the time, he was excluded from juvenile court jurisdiction. He was charged and prosecuted in adult court as a felon. A few months after, four months after he was charged, Austin entered an open guilty plea, and the court accepted the plea, ordered a PSI, a sex offender evaluation, and set a sentencing hearing. At the sentencing hearing, the trial court, after hearing evidence, sentenced Austin to 30 years, the maximum that he was eligible for. We've raised three sentencing issues in our brief, and those sentencing issues, the first of those is that in sentencing Austin, the trial court considered that Austin's acts caused or threatened serious harm to the victim without any real evidence of such. There was no victim impact statement and no testimony from any victim for the court to hear. The only evidence that the trial court heard were Austin's statements, and the trial court received the police reports and Austin's statements through the pre-sentence investigation report that was filed by the probation department. The trial court in sentencing Austin acknowledged that it could not tell what the level of harm would be to the victim because it had no evidence of such. Instead, the trial court speculated that crimes of this nature are such that victims will suffer harm in the future. In Pupil v. Calva, the court held that without evidence of additional harm caused, the harm that a court can consider is limited to that that is inherent in the offense, and we would argue that harm is inherent in the sex offense, and that without any additional evidence of harm to the victim, and there was none here, the court erred in considering this an aggravating factor. The second issue that we've raised in our brief with regard to sentencing is that the trial court abused its discretion that the sentence of 30 years was a violation of the Proportionate Penalties Clause of the Constitution. Austin is required, all defendants are required to be sentenced based on a sentence that is proportionate to their offense and that is intended to restore the offender to useful citizenship. In this particular situation, the trial court took into consideration the seriousness of the offense but failed to consider the ability to restore the offender. to useful citizenship. The sex offender evaluation report that was filed here contains information that says that Austin is able to recuperate and that the next six to nine years during which he matures will make a huge difference in his ability to refrain from sex offenses. The... I'm sorry. In setting a sentence, the trial court is supposed to set a ceiling for the sentence that is sufficient to rehabilitate the offender and that's this court's decision from People v. Odom. A ceiling that will allow Austin to be rehabilitated is the six to nine years that is listed in his sex offender evaluation not the 30 years that the court imposed on him. A sentence at the lower end of the scale is more appropriate in this situation. Also, a 30-year sentence for a 15-year-old boy is shocking to the moral conscience of the community. Austin's going to be in his 40s when he's released from prison. He will have spent more than twice his life locked up for a crime that he committed when he was 15 years old. Finally, the third issue that we've raised is an argument that the trial court abused its discretion in sentencing Austin to the 30-year maximum. The court considered inappropriate aggravating factors and failed to consider evidence of mitigating factors. In aggravation, the court considered the statutory factor of harm to the victim which we've already discussed. The court also considered the deterrent factor that a sentence was necessary to deter future behavior. Research indicates that deterrence is not effective in a juvenile population. Austin was sentenced as an adult, but he was actually 15 years old. Deterrence is not a factor that's going to affect Austin. The trial court considered the non-statutory factor of harm to the public in sentencing Austin and in fact said that, believed that harm to the public was the most significant factor it considered in sentencing Austin. However, even in sentencing Austin, considering the harm to the public, the trial court is still required to consider the fact that he is able to be restored to useful citizenship. And the trial court here in sentencing Austin to 30 years, the maximum available, essentially found that he has no rehabilitative potential. That's not the evidence that was before the trial court. Sex offender evaluation was very specific. Austin will continue to mature in the next six to nine years. I'm sorry to stop you, counsel, but did not the trial court, there was some evidence about obviously the, maybe hundreds of other acts that this young man had committed and did not the trial court say that obviously he is not, he's going to reoffend. He has be a reoffending something of that nature. They did your honor. And that was actually on my list. One of the non-statutory aggravating factors that the court here did consider was what I've referred to as these alleged substantial breaks that Austin received, the charges that were not filed or that the state dismissed. I think the state actually in this case dismissed one juvenile petition that it had filed against Austin. There were multiple charges mentioned by the trial court and they are in the pre-sentence investigation and sex offender evaluation as well that were not charged. However, there are a couple of things about that. The first is that the only evidence that the trial court had about those was Austin's statements. The in fact the charge, the juvenile court charge that the trial court or the state dismissed the named victim in that case was SS. And the only statement from SS was that Austin never did anything to her. So there is some contradiction to some of those multitude of offenses that Austin admitted to. One of the other things that was noteworthy about those other offenses that Austin allegedly committed is that mention was made of a situation where he and another six year old. So when he was six years old, he and another six year old girl had put their hands down each other's pants on the playground at school. Now that's certainly not behavior that we want to condone in our children, but it's also not criminal behavior. So when the trial court read and considered all of these other multitude of offenses, those are some of the offenses that the trial court took into consideration. This court in People v. Hill, People v. Hill was a case where a defendant was charged with a misdemeanor, convicted of a misdemeanor and sentenced for a misdemeanor. But in sentencing him, the trial court made reference to the fact that he could have been charged with a felony for that same offense. And defendant appealed and this court said since he was not charged with nor proven guilty of committing a felony, it would be improper to use this as a basis for setting his sentence. Austin wasn't charged with any of these other felony offense or any of these other offenses, primarily because the only evidence against Austin was Austin's own statements. The state never worked up a case or they tried to and simply couldn't. We don't know because the record doesn't tell us. What the record does tell us is that of the four victims, I believe it was four, five, I'm sorry, five named victims that Austin admitted to. One of those was a person who claims nothing ever happened to her. And one of those was a child who was six years old when Austin was also six. So, Austin did not receive substantial breaks when the state didn't file charges that the state didn't have evidence for and that the state couldn't prove. But the trial court certainly considered that as an incredibly significant factor in sentencing Austin. The trial court also failed to consider some mitigating factors. First, the cost to incarcerate Austin, it's going to cost the taxpayers of Illinois about a million dollars to keep this child locked up until he's in his forties. Austin pled guilty. He received no mitigating credit toward his sentence for having admitted what he had done, having apologized for what he had done, and having pled guilty. That is a mitigating factor that the court can, but is not required to consider. Trial court did not give sufficient weight to Austin's age and rehabilitative potential, which is listed in the sex offender evaluation. And the trial court simply did not give enough consideration to Austin's childhood and background in this particular case. And for all of those reasons, we ask the court to reverse, remand this matter for a new sentencing hearing. Thank you. Thank you, counsel. Obviously you'll have time for rebuttal. Mr. Daly. Thank you, your honor. May it please the court and counsel. My name is Patrick Daly. I'm here on behalf of the people of the state of Illinois. As counsel indicates correctly, the sex offender evaluation evaluator indicated that because of defendant's age, he is a candidate for rehabilitation. Also noted, however, in that same sex offender evaluation, his quote class be rated as a high risk to reoffend in a sexually aggressive manner. This evaluator does not believe that Austin can be safely maintained in a community. That your honors is probably an understatement. So let's look at the other side of Austin. So he was in this case charged with and pled guilty to aggravated criminal sexual assault as an individual under the age of 17, who committed an act of sexual penetration with the victim, SM was between ages of nine and 13 with anal penetration. The factual basis established that he pinned the victim down by arms and legs use force and basically told the victim not to tell anyone what was going on, causing the victim to cry, plead for help. SM, it should be noted was a defendant's cousin. Offending against family members appears to be a young family members appears to be part of defendant's modus operandi. At the age of 11, he fondled a three-year-old cousin vaginally, which is what the Springfield charges, which resulted in him being adjudicated on that and engaging in counseling. He did have counseling on that for a number of years. And then almost just after that counseling ended, he then committed the sexual assault in the present case. The sex offender evaluation noted that that defendant and has told the evaluator and or the police that he sexually assaulted his sister when he was 15 and she was 13. By the way, counsel said he was 15. I believe he was 16 when he was sentenced. He may have been 15 when he committed the offense. It's not really an important distinction. He's obviously very, but he's building up quite the resume of sexual violence here. He then in this case was a cousin. And then he also alleged or indicated that he had engaged in another once or twice performing oral sex or having someone, a girl perform oral sex on him by force to the police. He indicated that with regards to the sister, he had sexual thoughts about her masturbated while thinking about touching her engaged and had her engage in oral sex 30 times, 20 to 30 times of penile penetration that he used force with the cousin. He acknowledged 60 times including regular sexual intercourse 30 times. Now defendant did at the sentencing hearing disavow the frequency of these events. But notably, the defendant did not disavow the fact that they occurred. Instead and Dean acknowledged that he had done acts of sexual offenses numerous times with his relatives. Defendant focuses on what is perceived to be a contradiction because the only evidence here comes from, from Austin himself, the defendant himself. But the fact of the matter is, is that that is the best evidence. The defendant's acknowledgement to everyone, including the court about what he did. He never, never denied that he did these things and never denied doing them multiple times. The court considered sex offender evaluation in this case. And that was one of the complaints of council below was the use of these sex offender evaluations. But the court credited, I think reasonably so that it was decided to give the defendant a multitude of tests. But because of his age and complications with regards to that, as far as developing sex offender predictability findings, multiple tests were administered to the defendant. The sex offender recidivism risk assessment tool, the sexual adjustment inventory, the SUR 20, all of those are in the record. All of those are laid out in detail about what the results of those tests were and all of them indicate without, you know, contradiction to each other that he poses severe risk is potentially dangerous and has a high risk to be a fund. His mother testified interestingly enough. And, you know, it's hard, obviously none of us are here or there hearing her testify. There's plainly obvious that she knew what he was like, as far as being a manipulator. She indicated to the court that he would give the veneer or the impression that he was doing better and improving when in fact he was just kind of hiding it from everyone. So this is a, this is a individual who despite his youthful age presents as almost a uniquely dangerous sexual individual. And these are factors that the court was well within its right. And this court, you know, defers its discretion to the trial court and making these determinations that despite his youthfulness, his risk of reoffending and his apparent lack of rehabilitative potential was manifest. Here the defendant acknowledged that he engaged in sexual conduct because it made him feel more in power. Now, he tried to downplay and said that the counseling he received wasn't doing him much good because he was so young at the time. But now, I guess a fresh year or two off of that, he feels that counseling is going to be a lot better for him. He also named his father's sexual abuse. And I don't, obviously I don't, don't counter that nor its significance, but that is something that the court explicitly acknowledged at the time of sentencing that it took into consideration as well. Here the court had said that it didn't see the counseling was going to do any good for the defendant. He threatened serious harm. And we'll talk about that in a moment. But among other factors, the court does that prior history of delinquency, the need for deterrence and the risk that he posed with the community. Speaking first to the factor inherent to the defense, which is a threat of harm. I would note that this was not an argument raised in defendants, post trial or post sentencing motion. So in order for this to court to consider this, to have to consider it in the context of plain error because it's otherwise been forfeited. This is not a case where the evidence is close. We're talking about repeated assaults, no matter how you look at it, whether he told the sex evaluator, the police or the court itself, he acknowledged these particular acts. And the threat of psychological harm is real. The defendant focuses on the decision where, you know, the court says, well, there has to be some manifestation of actual harm in order for this to be a consideration for the court as a factor to be considered. But other courts, as the state has cited in its brief, have reached a conclusion that that threat of harm is certainly apparent in this type of offense. Looking at the Supreme Court's decision in People v. Cody, granted this language comes within the context of constitutional issues. The court, noting and quoting other cases, says that, quote, commentators are recognizing aside from any physical injury that a child may suffer in a sexual assault, children who are sexually assaulted are subject to chronic psychological problems that may be even more pernicious. Sexual assault has been described as short of homicide, the ultimate violation of self. Because of their emotional immaturity, children are exceptionally vulnerable to the effects of sexual assault. And so I think that what we have here is kind of two things going on. Number one, this is not an instance of an isolated threat that the defendant has imposed upon a child or an isolated act of crime imposed upon a child once. This is something that the defendant did over and over and over again. And to a particular victim, he did so. For the court to arrive at a conclusion that his conduct threatened serious harm in the sense of psychological harm, a type of harm that the Supreme Court has overtly recognized as a legitimate type of harm that is unique to and particularly pertinent to sexual assault offenses, the court's conclusion in that regard was not an error. And that being not an error, this court need not even reach whether plain error occurred. Defendant raises a proportionate penalties argument where this court has to consider the 30-year sentence as being cruel, degrading, or so wholly disproportionate to the offense that it would shock the moral conscience of the community. Obviously, a maximum sentence for a youthful offender is a serious offense. And it's one that the court has to take very seriously when it imposes a sentence. But this court should not arrive at the conclusion that that sentence was in fact disproportionate and unconstitutional. The proportionate penalties analysis breaks into two parts. Number one, the seriousness of the offense. And number two, the restoration of an offender to useful citizenship. The Cody Court talked about that first part, that being the seriousness of the offense. And I think that those things that I just mentioned are particularly applicable in the case here, particularly given the degree of the assaults and the frequency of them and the fact that he did so because he felt that it gave him power. And that, of course, is manifest in the fact that he engaged in these acts on family members, youthful family members over whom one can reasonably conclude he held some sort of sway with either threats of disclosure or coercion or with bribery by use of, I think, electronics is what he indicated as kind of his quid pro quo for allowing sexual conduct to occur. Restoration of offender to useful citizenship, which would be the rehabilitative aspect of it. Again, the court can look at the fact that here this is an individual who is a high risk to reoffend. He carries uniquely high risk of reoffend among, I think, this court can find under sex offenders generally. And the fact that he does so and did so that he felt that he's in power in doing so, it's difficult to subscribe to the notion that this type of dangerousness is just simply going to recede after eight or nine years. And again, pointing to that statement by which I started this argument, which was the evaluator's note that he is a high risk to offend in a sexually aggressive manner and cannot be safely maintained in the community is an appropriate consideration when I think you look at those two parts of the proportionate penalties analysis combined this court should not and cannot find that this sentence imposed here would be one that would shock the moral conscience of the community. Finally, with regards to whether the sentence was an abuse of judicial discretion, this court's well aware of the standard of review for that argument and that this court defers to the judgment of the circuit court and it can reverse or should reverse only an instance where the court abused its judicial discretion. So that's the highest form of deference to a lower court's decision. Again, as detailed here at the early outset of this argument, there was plenty of factors for this court to take into consideration with regards to the appropriateness of the sentence. Defendant argues that the court did not take into consideration certain mitigating factors. A court is not required to articulate all factors, both aggravation and mitigation. This is not a case where the court did not take a factor into consideration. There's no explicit evidence of that. So the presumption flows in favor of the courts having taken into consideration all proper factors that have to be considered. Notably here, the court was asked to, and acknowledged on the record that it took into consideration the application of the statutory juvenile factors. I've argued that I don't think that they were directly applicable in this case just based on the language. But regardless of whether they were or not, the court looked at 730 ILCS 5-5-4.5-105 and those factors that the court are now supposed to take into explicit consideration. The court did take into consideration the defendant's youthfulness, impetuosity, and other factors that are unique to juveniles that have been recognized in other cases. Here, I've gone through or attempted to go through some of those juvenile factors as they apply here. He may have been youthful, but there was nothing impetuous about the defendant's actions. He clearly had a plan. He was very intent on targeting certain individuals who are family members of a certain age in a manner in which he feels that he could exercise power over them and dominion so that he can engage in these sexual acts. While it's true that his father was a negative influencing factor in his life, and certainly that's not an uncommon characteristic of sex offenders that they come from households where they too may have been victimized by that, it was by all appearances that he was presently in a home. And he acknowledged as much that he got along well with his parents as well as mother and stepfather, I guess. Potential for rehabilitation is one of those factors which we've already discussed here a little bit. Obviously, counseling was not doing any good for him. He had years of it. Whether this court feels that it was going to do him any good or not because of his age, he did re-offend almost immediately after those concluded. Prior juvenile history, the circumstances of the offense, and his degree of participation, I think that those are all sort of self-evident based upon what the court considered below. So given the fact that the court did take into consideration everything, including the defendant's youthfulness and considerations that are unique to defendant's position being so young when these happen, this court should not find that the error occurred below either by abuse of discretion or the imposition of an unconstitutionally disproportionate sentence. Thank you, Your Honors. Thank you, Ms. Daly. Ms. Thompson, rebuttal? Thank you, Your Honor. Your Honor, the state's argument began with the same position that it took in its brief. Basically, Austin has been decided to be a risk in the community. He can't be maintained safely in the community. Therefore, we have to lock him up for the maximum 30 years. And that's not what the law says, and that's not what that sex offender report says. That sex offender report says, right now, Austin can't be maintained safely in the community. It also says that within the next six to nine years, as he develops, as he matures, as his impulse control grows stronger, that his risk level will go down. It will be reduced. He is not a person who had to be locked up for the maximum sentence in order for the community to be safe. The sex offender evaluation, there's some issues with that report. And the state did point out, none of these tests that were given to Austin are valid for juveniles. Not a single one of these tests. They gave multiple tests in an effort to give a broad position on what these test results would be. But the simple reality is, the sex offender report acknowledges not a single one of these tests is valid for juveniles, for people under the age of 18, which Austin was. So, some of those test results are incredibly negative toward Austin, but not all of them. And our brief outlines, some of these test results were actually positive for Austin. Some of them said that he does have the ability to change, that he wants to change. All of those things factor into his future ability to change. So, if we're going to accept the sex offender evaluation, we have to either accept it all or reject it all. It's completely unfair to say we're going to accept the parts we like that say that Austin can't be rehabilitated, so we should lock him up and disregard the parts that actually are favorable to Austin. It is true. Austin's mother testified against him. I don't know if she testified against him, but she testified at the sentencing hearing. She also acknowledged during that sentencing hearing that she had not been aware that her son was a victim of sexual assault herself. She didn't know that her husband was sexually abusing her child. And she acknowledged during her testimony that that could have had an impact on Austin and his behavior. And Ms. Thompson, I don't mean to stop you, especially mid-argument, but with little time left, I'd like for you to discuss this waiver issue as to issue one. I know you addressed it in your reply brief, but I'd like you to expound on that, please. Your Honor, it is the state's accurate. The trial court or trial counsel did not raise the issue of inherent harm. We believe that it constitutes plain error and argued that in the reply brief. I'm sorry, I'm trying to find my references. Essentially, we have, in the Calva decision, the trial court, I'm sorry, the appellate court was clear that it is inappropriate to use behavior that is inherent in the offense as an aggravating factor. It becomes plain error in this situation because the trial court placed significant weight on that factor. And for that reason, I think that the trial court erred in doing so. The trial court in its final sentencing considered the harm to the victims and the protection of the public, I think were the two deciding factors that the trial court used in reaching that maximum sentence. The final thing that I would like to point out, Mr. Daley has argued for the state that Austin has been in counseling and it has failed and he's been in counseling and it has failed and he's been in counseling and it has failed. We repeatedly order people into counseling for treatment.  is the only thing that is going to work, that is going to solve the problem, people are ordered repeatedly. DUI offenders are ordered repeatedly go through DUI alcohol treatment. Domestic batterers are ordered repeatedly into abuse counseling. We recognize that human behavior is such that it sometimes takes more than once to change it. Austin was 15 years old with all of the internal contradictions that come with being 15 years old. A 30 year sentence was inappropriate here. Thank you. Thank you, counsel. The matter will be taken under advisement and an order will be released in due course. Thank you all very much. Thank you. Thank you.